IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| UMPQUA BANK, an Oregon chartered bank,<br><br>                      Plaintiff,<br><br>      v.<br><br>IMELDA R. HAMILTON, a single person; THE ESTATE OF JAMES D. HAMILTON, DECEASED; THE HEIRS AND DEVISEES OF JAMES D. HAMILTON, DECEASED; TWIN LAKES GOLF AND COUNTRY CLUB, a Washington nonprofit corporation; U.S. BANK NATIONAL ASSOCIATION N.D.; STATE OF WASHINGTON, DEPARTMENT OF LABOR AND INDUSTRIES; TWIN LAKES HOMEOWNER'S ASSOCIATION, INC., a Washington nonprofit corporation; STATE OF WASHINGTON, EMPLOYMENT SECURITY DEPARTMENT; SCOTT PARIS, an individual; FINANCIAL ASSISTANCE, INC., a Washington corporation; and ALL OTHER PERSONS OR PARTIES UNKNOWN CLAIMING ANY RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE REAL ESTATE DESCRIBED IN THE COMPLAINT HEREIN,<br><br>                      Defendants,<br><br>F.C. BLOXOM COMPANY (AKA F.C. BLOXOM COMPANY, INC.), an inactive Washington corporation; LEDLOW & ASSOCIATES, INC., a Florida corporation;<br><br>                      Respondents,<br><br>TEN BRIDGES LLC,<br><br>                      Appellant. | No. 79855-3-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

CHUN, J. — After a judicial foreclosure sale of her home, Imelda Hamilton executed a quitclaim deed in favor of Ten Bridges LLC. F.C. Bloxom Company and Ledlow & Associates, Inc. (collectively Respondents) both made claims to the surplus proceeds. The trial court entered an Agreed Order to Distribute Funds.

Three months later, Ten Bridges learned of the Agreed Order to Distribute Funds and moved for relief under CR 60(b). The trial court denied the motion. Ten Bridges claims the trial court erred by determining (1) it could not assert the homesteader's rights to claim the surplus proceeds, and (2) it was not entitled to notice of the Agreed Order to Distribute Funds. We determine that Hamilton's execution of a quitclaim deed extinguished any homestead rights she had in her home and Ten Bridges. Thus, she could not transfer her homestead interest to Ten Bridges. We also conclude that Ten Bridges failed to appear in the action, informally or otherwise. As a result, we affirm.

## I. BACKGROUND

Hamilton owned real property in Federal Way (Property) and occupied it as her residence. Umpqua Bank commenced a judicial foreclosure on its deed of trust against the Property. The King County Sheriff then sold the Property to Bloxom for $293,000. After the sale, Hamilton executed a quitclaim deed in favor of Ten Bridges for her interest in the Property in exchange for $5,000. The quitclaim deed was recorded with the King County Recorder's Office.

The trial court then entered an order confirming the sale of the Property. After satisfaction of Umpqua Bank's lien, $92,837.60 remained for the court to

2

disburse in accordance with RCW 6.21.110(5).[1]

The next month, Bloxom asserted a lien of $111,330.26 against the property.  In response, Ledlow also asserted a lien and filed an objection requesting a $66,269.81 disbursement before any payment to Bloxom.

Bloxom then conducted a title search and discovered Ten Bridges' quitclaim deed.  Bloxom contacted Ten Bridges, who then e-mailed Bloxom a copy of the deed.

Later that month, the trial court entered an Agreed Order to Distribute Funds submitted by Bloxom, Ledlow, and a third party.[2]  Ten Bridges did not receive notice of any pleadings seeking disbursement of the surplus proceeds before the court entered its order.

---

[1] RCW 6.21.110(5) provides:

(a) If, after confirmation of the sale and the judgment is satisfied, there are any proceeds of the sale remaining, the clerk shall pay such proceeds, as provided for in (b) of this subsection, to all interests in, or liens against, the property eliminated by sale under this section in the order of priority that the interest, lien, or claim attached to the property, as determined by the court.  Any remaining proceeds shall be paid to the judgment debtor, or the judgment debtor's representative, as the case may be, before the order is made upon the motion to confirm the sale only if the party files with the clerk a waiver of all objections made or to be made to the proceedings concerning the sale; otherwise, the excess proceeds shall remain in the custody of the clerk until the sale of the property has been disposed of.

(b) Anyone seeking disbursement of surplus funds shall file a motion requesting disbursement in the superior court for the county in which the surplus funds are deposited. Notice of the motion shall be served upon or mailed to all persons who had an interest in the property at the time of sale, and any other party who has entered an appearance in the proceeding, not less than twenty days prior to the hearing of the motion. The clerk shall not disburse such remaining proceeds except upon order of the superior court of such county.

[2] Twin Lakes Golf and Country Club was also a party to the joint proposed order. Twin Lakes had a senior lien to the surplus proceeds that none of the parties to this appeal dispute.

3

Three months after the court entered the Agreed Order to Distribute Funds, Ten Bridges moved to vacate it under CR 60(b)(1) and (11). It purported to assert what had been Hamilton's homestead rights to the surplus funds and argued that this interest was superior to those of Bloxom and Ledlow. The court denied Ten Bridges' motion. Ten Bridges appeals.

## II. ANALYSIS

We review a trial court's ruling on a CR 60(b) motion to vacate for an abuse of discretion. Shandola v. Henry, 198 Wn. App. 889, 896, 396 P.3d 395 (2017). "A trial court abuses its discretion when its decision is based on untenable grounds or is made for untenable reasons." Shandola, 198 Wn. App. at 896.

### A. Homestead Act

Ten Bridges asserts that the trial court erred by determining that a homeowner could not, post-sale, convey an interest in exempt surplus proceeds. Respondents argue the trial court properly ruled that Ten Bridges could not assert what had been Hamilton's homestead interest to obtain the surplus proceeds. We hold that a homeowner cannot transfer their homestead interest to another party through a quitclaim deed.

We review de novo issues of statutory interpretation. Nw. Cascade Inc. v. Unique Constr. Inc., 187 Wn. App. 685, 696, 351 P.3d 172 (2015).

Washington passed its first homestead law in 1895 under a constitutional mandate. See 1895 c 64 § 1; Rem. Supp. 1945 § 528; CONST. art. XIX, § 1 ("the legislature shall protect by law from forced sale a certain portion of the

4

homestead and other property of all heads of families."). The purpose of Washington's "Homestead Act" (Act), chapter 6.23 RCW, is to place qualifying homes, or portions of them, beyond the reach of financial misfortune and to promote the stability and welfare of the state. Clark v. Davis, 37 Wn.2d 850, 852, 226 P.2d 904 (1951). We liberally construe the Homestead Act in favor of the debtor so it may achieve its purpose of protecting homes. In re Dependency of Schermer, 161 Wn.2d 927, 953, 169 P.3d 452 (2007).

But "there can be no homestead right unless there is an existing interest of some nature." Sec. Sav. & Loan Ass'n v. Busch, 84 Wn.2d 52, 56, 523 P.2d 1188 (1974). So as a general rule, "a valid conveyance of the homestead property by the homesteader extinguishes [their] homestead rights." Busch, 84 Wn.2d at 53 n.3.

Hamilton conveyed all her interest in the Property to Ten Bridges through a quitclaim deed. This conveyance extinguished any homestead interest that she had in the property, which interest therefore could not be transferred to Ten Bridges. See Busch, 84 Wn.2d at 55-56 (holding that the homesteader's execution of a quitclaim deed extinguished his homestead rights). Thus, Ten Bridges could not make a valid claim to the surplus proceeds.

Ten Bridges contends that "[o]nce Hamilton's homestead exemption interest was liquidated at the Sale, her interest in the funds was fixed, and she was free to convey it at her discretion." But Ten Bridges cites no legal authority in support of its argument. While Ten Bridges notes that the quitclaim deed in

Busch occurred before the sheriff's sale of the home, the case does not limit its holding to that context.

We do not see how allowing a homesteader to sell their rights to surplus proceeds of potentially $125,000,[3] here in exchange for $5,000, helps promote the Homestead Act's purpose. Thus, even when liberally construing the Act, we conclude that a homeowner cannot transfer their homestead interest through a quitclaim deed. Thus, the trial court correctly determined that Ten Bridges did not have a valid claim to the surplus proceeds. Because Ten Bridges asserted no other basis for a claim to the surplus proceeds, the trial court did not abuse its discretion by denying its motion for relief under CR 60(b).

B. Notice

Ten Bridges next argues that it did not receive adequate notice of the Agreed Order to Distribute Funds. Respondents argue that Ten Bridges was not entitled to such notice because it had not appeared in the action. We agree with Respondents.

We review a trial court's determination on whether a party has appeared in an action for an abuse of discretion. Prof'l Marine Co. v. Those Certain Underwriters at Lloyds, 118 Wn. App. 694, 708, 77 P.3d 658 (2003). Thus, we "will not disturb the trial court's decision unless it was manifestly unreasonable, based on untenable grounds or untenable reasons." Prof'l Marine Co., 118 Wn. App. at 708.

---

[3] See RCW 6.13.030.

Under RCW 6.21.110(5)(b), a party must serve notice of a motion for disbursement of surplus "to all persons who had an interest in the property at the time of the sale, and any other party who has entered an appearance in the proceeding." Typically, "a party 'appears' in an action when it 'answers, demurs, makes any application for order therein, or gives the plaintiff written notice of [their] appearance." Prof'l Marine Co., 118 Wn. App. at 708 (quoting RCW 4.28.210). But Washington courts will also apply the doctrine of substantial compliance to determine whether a party has appeared. Morin v. Burris, 160 Wn.2d 745, 755, 161 P.3d 956 (2007). To satisfy this doctrine, "the defendant must go beyond merely acknowledging that a *dispute* exists and instead acknowledge that a dispute exists *in court.*" Morin, 160 Wn.2d at 756.

Ten Bridges contends that it appeared under the substantial compliance doctrine through communications to Bloxom's counsel. But Ten Bridges submits no evidence showing that it acknowledged a dispute in court in its communications with Bloxom. The only evidence Ten Bridges submitted of the communications was a declaration and a copy of the e-mail it sent to Bloxom's counsel. The declaration provides that "Ten Bridges did not receive notice of any pleadings seeking the disbursement of the Surplus Proceeds prior to the entry of the Surplus Proceeds Order" and that Ten Bridges' counsel "spoke with [Bloxom's] counsel on or about August 10, 2018 regarding the Quit Claim Deed and Ten Bridges' interest in the Property and the Surplus Proceeds." The redacted e-mail merely states that "[Bloxom's counsel] asked me to forward you a copy of the recorded Quit Claim Deed for this property." Neither the

7

declaration nor the e-mail shows that Ten Bridges acknowledged that a dispute existed in court. Thus, the trial court did not abuse its discretion by determining that Ten Bridges was not entitled to notice under the substantial compliance doctrine.

Ten Bridges also appears to argue that the court should have granted its motion for relief because Bloxom knew of Ten Bridges' quitclaim deed, but failed to notify it of its pending motion for disbursement of the surplus proceeds. RCW 6.21.110(5)(b), however, required Bloxom to serve notice only "to all persons who had an interest in the property at the time of the sale, and any other party who has entered an appearance in the proceeding." Ten Bridges does not claim that it constituted either. Thus, it fails to offer a legal theory that required Bloxom to notify it of its motion. For these reasons, we determine the trial court did not abuse its discretion by denying Ten Bridges' motion for relief on the ground that it received inadequate notice.

We affirm.

_Chun, J._

WE CONCUR:

_Mann, C.J._          _Appelwick, J._

8